**Sealed**

Public and unofficial staff access to this instrument are prohibited by court order

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

United States Courts
Southern District of Texas
FILED

*February 15, 2023*

Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **(1) HEATHER ANN CAMPOS** | § | |
| **aka Jill Turner,** | § | **CRIMINAL NO. 4:22-CR-33-S3** |
| **(2) DAVID LEWIS BEST, Jr.,** | § | |
| **(6) ELVINA BUCKLEY,** | § | |
| **(7) STEPHEN LAVERNE CRABTREE,** | § | |
| **(8) STEVEN TETSUYA MORIZONO** | § | |
| **aka Jeff Lucian aka Jeff Lucin,** | § | |
| **(11) BLANKA UHROVCIKOVA** | § | |
| **aka Blanka Williams,** | § | |
| **(12) JESUS ALBERTO ADAME CORDOVA,** | § | |
| **(13) KIMBERLI ANN TOMMAN,** | § | |
| **(14) RICHARD THOMAS GRASSIE,** | § | |
| **(15) ARLEEN MARIE GROKETT, and** | § | |
| **(16) LUIS GIANCARLO BELEVAN** | § | |

## THIRD SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment:

1.    Caliber Home Loans, Inc. was a mortgage lending business.

2.    United Wholesale Mortgage was a mortgage lending business.

3.    International Bank of Commerce was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation (FDIC).

4.    Citizens Bank, N.A. was a financial institution, the deposits of which were insured by the FDIC.

5.    Cardinal Financial Company, Limited Partnership was a mortgage lending business.

6.      Carrington Mortgage Services, LLC was a mortgage lending business.

7.      Home Point Financial Corporation was a mortgage lending business.

8.      NewRez LLC was a mortgage lending business.

9.      Academy Mortgage Corporation was a mortgage lending business.

10.      Cherry Creek Mortgage, LLC was a mortgage lending business.

11.      Defendant HEATHER ANN CAMPOS aka Jill Turner (CAMPOS) was a resident of Spring, Texas.

12.      Defendant DAVID LEWIS BEST, Jr. (BEST) was a resident of California and Spring, Texas.

13.      Defendant ELVINA BUCKLEY (BUCKLEY) was a resident of Spring, Texas and a realtor.

14.      Defendant STEPHEN LAVERNE CRABTREE (CRABTREE) was a resident of the greater Salt Lake City area in Utah.

15.      Defendant STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin (MORIZONO) was a resident of Mission Viejo, California.   MORIZONO claimed to have experience in the banking and finance industry.

16.      Defendant BLANKA UHROVCIKOVA aka BLANKA WILLIAMS (UHROVCIKOVA) was a resident of the greater Salt Lake City area in Utah.

17.      Defendant JESUS ALBERTO ADAME CORDOVA (ADAME) was a resident of Houston, Texas.

18.      Defendant KIMBERLI ANN TOMMAN (TOMMAN) was a resident of Spring, Texas, and a licensed mortgage broker.

19.    Defendant RICHARD THOMAS GRASSIE (GRASSIE) was a resident of Minnesota and Texas.

20.    Defendant ARLEEN MARIE GROKETT (GROKETT) was a resident of Texas.

21.    Defendant LUIS GIANCARLO BELEVAN (BELEVAN) was a resident of Georgia and Arizona.

22.    In or around 2000, CAMPOS began working in the mortgage industry in Houston, Texas, and surrounding areas.  CAMPOS later became a loan officer and mortgage broker for various companies, including Caliber Home Loans, where she worked with TOMMAN.  As a loan officer and mortgage broker, CAMPOS facilitated mortgages for residential properties for customers, family members, and later, for her co-defendants and conspirators.  BUCKLEY acted as the realtor for CAMPOS's customers, family members, and later, their conspirators, including straw buyers of residential properties.

## COUNT 1
### False Statement to a Mortgage Lending Business
### (18 U.S.C. § 1014)

23.    On or about March 18, 2016, within the Southern District of Texas and elsewhere, the defendant

### (1) HEATHER ANN CAMPOS
### aka Jill Turner

knowingly and willfully made a false statement and report for the purpose of influencing the actions of Caliber Home Loans, Inc., a mortgage lending business, in connection with the application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, and loan for the property at 31111 Purdue Park Lane, Spring, Texas, that is, false statements concerning the borrower's qualifications, including but not limited to the borrower's employment, income, assets, and bank statements, in violation of 18 U.S.C. § 1014.

## COUNT 2
### False Statement to a Mortgage Lending Business
### (18 U.S.C. § 1014)

24.    On or about May 12, 2017, within the Southern District of Texas and elsewhere,

the defendant

### (1) HEATHER ANN CAMPOS
### aka Jill Turner

knowingly and willfully made a false statement and report for the purpose of influencing the

actions of Caliber Home Loans, Inc., a mortgage lending business, in connection with the

application, advance, discount, purchase, purchase agreement, repurchase agreement,

commitment, and loan for the property at 3390 Ashton Springs Lane, Pearland, Texas, that is, false

statements concerning the borrower's qualifications, including but not limited to the borrower's

assets and bank statements, in violation of 18 U.S.C. § 1014.

## COUNT 3
### Conspiracy to Make False Statements to Mortgage Lending Businesses
### and Financial Institutions
### (18 U.S.C. § 371)

25.    The Grand Jury realleges the factual allegations set forth above in Paragraphs 1-22

and incorporates them as if fully set forth in Count 3 of this Indictment.

26.    From in or around August 2017 through in or around July 2021, within the Southern

District of Texas and elsewhere, defendants

### (1) HEATHER ANN CAMPOS
### aka Jill Turner,
### (2) DAVID LEWIS BEST, Jr.,
### (6) ELVINA BUCKLEY,
### (7) STEPHEN LAVERNE CRABTREE,
### (8) STEVEN TETSUYA MORIZONO
### aka Jeff Lucian aka Jeff Lucin,
### (11) BLANKA UHROVCIKOVA
### aka Blanka Williams,
### (12) JESUS ALBERTO ADAME CORDOVA,
### (13) KIMBERLI ANN TOMMAN,

**(14) RICHARD THOMAS GRASSIE, and**
**(15) ARLEEN MARIE GROKETT**

did knowingly and willfully combine, conspire, confederate, and agree with one or more persons

known and unknown to the Grand Jury to commit certain offenses against the United States,

namely, to willfully and knowingly make false statements in loan applications for the purpose of

influencing mortgage lending businesses and financial institutions, in violation of 18 U.S.C. §

1014 (false statement to mortgage lending businesses and financial institutions).

## PURPOSE OF THE CONSPIRACY

27.     Using various entity names such as Jeff Funding, KMD Credit, KMD Capital,

Frona Group, North Moon Group, Second Chance CPR, and Second Chance Enterprises, among

others, Defendants MORIZONO, CAMPOS, BEST, BUCKLEY, and BELEVAN (collectively,

the Jeff Funding Defendants) operated a multi-layered fraud scheme involving credit repair,

mortgage fraud, bank fraud, and Small Business Administration (SBA) fraud.  It was a purpose

of the conspiracy for the Jeff Funding Defendants and their co-conspirators, known and unknown

to the Grand Jury, to unlawfully enrich themselves by recruiting clients like CRABTREE,

UHROVCIKOVA, GRASSIE and GROKETT to fraudulently "clean" the client's credit history

so they could fraudulently obtain various loans, such as mortgages and other unsecured personal

loans from various lenders, banks, and the SBA.  The Jeff Funding Defendants also conspired

with others like ADAME and mortgage broker TOMMAN.

28.     After a client received a loan or a mortgage, the Jeff Funding Defendants collected

a percentage of the client's loan proceeds, as a fee or a commission, or otherwise fraudulently

enriched themselves by submitting falsified payoff statements to lenders.  The Jeff Funding

Defendants obtained loans for themselves and others involved in the conspiracy and used the funds

for their operating costs and personal expenses.

29.     Capitalizing on the emergency financial assistance provided in response to the COVID-19 pandemic, the Jeff Funding Defendants obtained COVID forbearance for payments due for mortgages while obtaining money and loans from the SBA and financial institutions on behalf of their clients, themselves, and conspirators by means of materially false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS OF THE CONSPIRACY

30.     MORIZONO, using the alias "Jeff Lucian" and "Jeff Lucin" was the leader and namesake of the Jeff Funding Defendants and their conspiracy.  MORIZONO established the guidelines, vision, and strategy for the criminal scheme.  MORIZONO often instructed other conspirators in carrying out the scheme and also counseled and advised clients directly.

31.     CAMPOS generally handled the day-to-day tasks and internal operations of Jeff Funding and the conspiracy.

32.     The Jeff Funding Defendants and their conspirators, known and unknown to the Grand Jury, recruited clients and offered to "clean" and improve the clients' credit.  The Jeff Funding Defendants recruited clients through "brokers" from across the United States, promising to obtain "funding," or unsecured personal loans or credit cards for clients after "cleaning" the clients' credit histories.

33.     The Jeff Funding Defendants and their conspirators did so by blocking debts, collections, bankruptcies, late payments, and credit inquiries listed on a client's credit report by making a false report, under penalty of perjury, to the Federal Trade Commission (FTC) and claiming that the listed debts, collections, bankruptcies, late payments, and credit inquiries were due to identity theft.

34.     After filing the identity theft report with the FTC, the Jeff Funding Defendants and their conspirators sent the FTC identity theft report and other documents to the credit bureaus, demanding that the debts, collections, bankruptcies, late payments, and credit inquiries be removed and blocked from the client's credit report.   The Jeff Funding Defendants requested clients, like CRABTREE, to provide certain documentation to remove bankruptcies from the client's credit report, although both the client and the Jeff Funding Defendants knew that the bankruptcies were accurately reported.   As a result of claiming identity theft, the client's credit score would generally improve.

35.     Due to the high volume of clients and to obtain cheap labor, the Jeff Funding Defendants and their conspirators set up offices in Mexico and hired employees to submit the FTC identity theft reports online and to assist in operating the fraudulent scheme.

36.     After a client's credit score improved, the Jeff Funding Defendants offered to obtain unsecured personal loans and credit cards, among other "funding," on behalf of the client. Sometimes, the Jeff Funding Defendants instructed clients to directly apply for loans and to claim a falsely inflated income, list a fake employer, and make other false statements to lenders to qualify for the loan.

37.     Other times, the Jeff Funding Defendants directly submitted the loan applications on behalf of the clients.   The Jeff Funding Defendants and their conspirators facilitated these loans by including false statements and fake documents in the loan applications, which were then submitted to the lenders.   The false qualifying loan information included falsely enhanced credit scores due to the identity theft reports filed with the FTC, false employment information, false employment verification, fabricated purpose of the loan proceeds, falsely inflated income and assets, and falsified bank account statements.   The Jeff Funding Defendants and their conspirators

set up fake companies, websites, and phone directories to make it appear as if their clients were employed at these companies.

38.    The Jeff Funding Defendants and conspirators, however, controlled the contact information for the fake companies and using aliases, verified employment information for the clients and other conspirators.

39.    When a lender called a loan applicant with questions, the Jeff Funding Defendants either coached the client as to the answers or impersonated the client and gave false answers.

40.    After a loan was approved, the Jeff Funding Defendants and their conspirators demanded a percentage of the loan proceeds from the client.   In some cases, the client would again default on the loan payments, which would then be reported to the credit bureaus and lower the client's credit score.   The Jeff Funding Defendants would "clean" the client's credit history again, by falsely claiming identity theft to the FTC and the credit bureaus.

41.    The Jeff Funding Defendants and their conspirators also offered to fraudulently boost a client's credit score by obtaining a mortgage in the client's name and using the client as a straw buyer of the residential property, although the client did not intend to reside at the property or pay the mortgage.   BUCKLEY acted as the realtor for the Jeff Funding Defendants for some of the properties, knowing that the properties would be held in the names of straw buyers and collected real estate commissions after closings.   The Jeff Funding Defendants and their conspirators recruited clients from Texas and other states across the United States.

42.    The mortgage applications contained false information and fake documents about the straw buyers' contact information, employment, income, assets, and the buyers' intent to make the residence their "primary residence," among other false information.   The Jeff Funding Defendants and their conspirators included false contact information for the client, including

telephone numbers and email accounts, so that when a lender contacted the straw buyer, the Jeff Funding Defendants and their conspirators would be notified and respond directly to the lender, pretending to be the client.

43.    For mortgages that CAMPOS had brokered, after approval, CAMPOS collected the mortgage broker fees.   The Jeff Funding Defendants and other conspirators then rented out the properties to tenants, who were often instructed not to contact the listed homeowners.

44.    After the COVID-19 global pandemic and economic crisis, the Jeff Funding Defendants took advantage of various programs to suspend mortgage payments for the properties, even while collecting rental payments from the tenants and rental assistance programs.   If a mortgage went into default, the straw buyer would be the responsible party.

## **OVERT ACTS**

45.    In furtherance of the conspiracy and to achieve the purpose and objects thereof, MORIZONO, CAMPOS, BEST, BUCKLEY, BELEVAN, ADAME, TOMMAN, and their co-conspirators, including clients CRABTREE, UHROVCIKOVA, GRASSIE, and GROKETT, and others known and unknown to the Grand Jury, committed at least one of the following overt acts, among others:

46.    MORIZONO and CAMPOS met BELEVAN while BELEVAN was working at another credit repair company.   In or around March 2019, BELEVAN flew to Houston, Texas and trained Jeff Funding employees how to "clean" credit by filing FTC identity theft reports, contacting the credit bureaus, and sending written correspondence demanding that negative items be blocked from the client's credit history.   MORIZONO and CAMPOS later recruited BELEVAN to join Jeff Funding and BELEVAN became an employee of Jeff Funding. BELEVAN also recruited clients for credit repair for Jeff Funding.

47.    MORIZONO and others known and unknown to the Grand Jury created and revised guidelines for the conspiracy and instructions for their clients.    In a document titled "Instructions for Credit Compliance," Instruction No. 6 stated "[i]f a creditor contacts the Client for any reason, the Client MUST indicate that they have no idea or do not know why they are being called.    It is imperative Client in no way acknowledges any past debt to any creditor during this process."    The Jeff Funding Defendants requested that clients sign and return this document to Jeff Funding.

48.    MORIZONO also advised clients regarding their credit worthiness and instructed other Jeff Funding employees and conspirators as to which negative information should be removed or blocked from a client's credit report.

49.    On or about June 19, 2018, BUCKLEY, as the realtor, submitted a Disbursement Authorization form for 3722 West Bender Landing Blvd in Spring, Texas with the buyer as CAMPOS, in anticipation for a realtor commission.    On the form, BUCKLEY listed the lender as "Jeff Funding" and the representative at the lender as "JILL TURNER," an alias for CAMPOS.

50.    On or about July 18, 2018, CAMPOS, as the mortgage broker, submitted an employment verification request for BEST to Second Chance CPR Inc. so that BEST could instead purchase 3722 West Benders Landing Blvd, Spring, Texas as a straw buyer.    CAMPOS did not disclose to the lender that Second Chance CPR Inc. was a company created by CAMPOS. CAMPOS, using the alias JILL TURNER, falsely verified employment and income for BEST, who purported to be employed as the "Accounting Manager" at Second Chance CPR Inc.

51.    On or about July 24, 2018, CAMPOS contacted ADAME to purchase his bank statements.    CAMPOS informed ADAME that she was trying to close a deal for herself and needed to "show an account with funds in it" and that she had cash, but "no paper [t]rail."    In

January 2019, ADAME again sold CAMPOS his bank statements, knowing that his bank statements would be fraudulently used by CAMPOS.

52.     On or about August 16, 2018, CAMPOS, as the mortgage broker, requested verification of employment for the straw buyer for the property at 3807 Oakfield Forest Lane, Spring, Texas.   Then, using the alias JILL TURNER, CAMPOS verified employment and income for the straw buyer who purported to be a "Consulting Manager" at Second Chance CPR Inc.

53.     On or about October 22, 2018, BUCKLEY provided her bank statements to be used fraudulently in a mortgage application for the property at 30714 Lavender Trace Drive, Spring, Texas.   The bank statement was doctored to show that the buyer had a joint account with BUCKLEY, to falsely inflate the buyer's assets.   The buyer, however, was not a joint account owner on BUCKLEY's account.

54.     MORIZONO coached other Jeff Funding conspirators on how to sell the mortgage program to clients.   MORIZONO also sold the mortgage program to the clients and emphasized that they could improve their credit scores by having a mortgage in their names, without having to make any mortgage payments, and the client could obtain even more unsecured personal loans.

55.     On or about May 7, 2019, while refinancing the property at 3722 West Benders Landing Blvd, BEST submitted a letter that falsely stated that his employer, Digital Networks LLC, was based in Florida and that he worked remotely from his residence in Spring, Texas.

56.     To induce the lender into believing that the fake companies were legitimate, the Jeff Funding Defendants and their conspirators set up websites for fake companies such as Cali Networks, LLC, Digital Networks LLC, First In First Out, and Radiate LLC, among others. These websites had contact information for the fake companies that were also controlled by the Jeff Funding Defendants and their conspirators.   At times, other conspirators made voice

recordings of telephone directories for the fake companies and inserted the straw buyer's name in the directory, so that when a lender called to verify employment, the fake company appeared to be legitimate, and the straw buyer appeared to be employed at the fake company.

57.     On or about May 13, 2019, client CRABTREE exchanged text messages with a Jeff Funding conspirator so that Jeff Funding could remove bankruptcies from CRABTREE's credit history.

58.     UHROVCIKOVA also had her credit cleaned by the Jeff Funding Defendants and requested that various late payments be removed from her credit history.   After her credit was cleaned, UHROVCIKOVA conspired with a Jeff Funding conspirator to falsely "enhance" her income in a loan application to a financial institution.

59.     On or about July 30, 2019, TOMMAN conspired with CAMPOS to obtain a mortgage for a property at 24080 Augusta Drive, in Corona, California, on behalf of a straw buyer. CAMPOS claimed to the lender that the straw buyer's spouse was deceased and the lender requested a copy of the spouse's death certificate to show that the borrower would not be responsible for any further alimony payments.   In response, TOMMAN searched for and located a copy of a Minnesota death certificate online and sent it to CAMPOS.

60.     After CAMPOS altered the death certificate, she informed TOMMAN that she had printed the falsified death certificate, "scanned and printed," and "wadded up and scanned again" to make the certificate appear authentic.   TOMMAN responded "I would hate for someone in ops to be the former coroner in Minnesota lol."   CAMPOS replied "LOL."   This death certificate was then submitted to the lender so that the straw buyer could qualify for the mortgage.   After the mortgage was approved, Jeff Funding rented this California property to MORIZONO's accountant.

61.     On August 22, 2019, Jeff Funding obtained a mortgage for a property at 7 Abbey Brook Place, The Woodlands, Texas, in the name of a conspirator who was residing in Arizona. At MORIZONO's instruction, in January 2020, the conspirator flew to Houston, Texas to obtain a Texas Identification that falsely reflected the conspirator's address as 7 Abbey Brook Place, The Woodlands, Texas.   The purpose was for the conspirator to have an identification card that matched the address of the mortgage listed on the conspirator's credit reports.

62.     On or about December 2, 2019, Jeff Funding obtained a mortgage on a house located at 4009 Avenue O½ in Galveston, Texas on behalf of a straw buyer client.   The mortgage application falsely claimed that the straw buyer was employed at Richard's Custom Water, receiving a falsely inflated salary.   GRASSIE falsely verified the straw buyer's employment and salary, although the straw buyer was not employed at Richard's Custom Water and did not earn a salary of $162,000.

63.     On or about December 16, 2019, CAMPOS emailed a Jeff Funding conspirator, stating that she needed paystubs for client UHROVCIKOVA.   Attached to this email were previously created fake paystubs for UHROVCIKOVA for a company called First In First Out. Fake paystubs for UHROVCIKOVA were submitted as a part of UHROVCIKOVA's mortgage application for the property at 629 17th Avenue North, in Texas City, Texas.

64.     On or about February 11, 2020, after having her credit repaired, GROKETT closed on a mortgage for the property at 3807 Oakfield Forest Lane, in Spring, Texas.   Although GROKETT did not reside at the property, GROKETT obtained a mortgage for a primary residence and signed the closing documents, including the Affidavit of Occupancy.   The mortgage application also contained false statements regarding GROKETT's employment, income, assets, and falsified bank statements.   The next day, GROKETT obtained an unsecured personal loan

from Navy Federal Credit Union.   The loan application again contained false statements about GROKETT's employment, income, and stated that GROKETT owned real property.

65.     On or about December 3, 2020, GRASSIE signed closing documents, including the Affidavit of Occupancy, for 3722 West Benders Landing Blvd, in Spring, Texas, although GRASSIE did not reside at the property.

66.     During the COVID-19 pandemic, the Jeff Funding Defendants and their conspirators, using the entity names Jeff Funding and North Moon Group, among others, obtained money from the SBA and from financial institutions by submitting loan applications and supporting documentation on behalf of themselves, other conspirators, and their clients.   In exchange, the Jeff Funding Defendants and their conspirators took a percentage from the loan proceeds.

67.     MORIZONO and his conspirators, known and unknown to the Grand Jury, pitched SBA "funding" to clients.   MORIZONO informed one client that Jeff Funding did a "quick pivot" to "SBA, understanding that there's no bank in this country that can compete" against the federal government.   According to MORIZONO, he became involved in this to "help people get money, beat the system," even though MORIZONO "used to be part of that system."

68.     The Jeff Funding Defendants and their conspirators received intake applications from clients all around the United States.   The Jeff Funding Defendants and their conspirators created login and account information for their clients for the purpose of submitting the loan applications to the SBA and to financial institutions.

69.     The Jeff Funding Defendants and their conspirators concealed from the lenders that they were acting as agents and brokers on behalf of their clients.   To further conceal the fact that the application was being submitted by the Jeff Funding Defendants and their conspirators, they

set up Internet Protocol (IP) addresses that appeared to originate from the client's state of residence, rather than from Spring, Texas and surrounding areas.

70.    The Jeff Funding Defendants and their conspirators also falsified the client's information, such as the client's business gross revenues, number of employees, and dates of business operations, to fraudulently induce the lenders and the SBA into approving the loan applications.

71.    When a lender contacted a client directly, the Jeff Funding Defendants and their conspirators contacted each other and the clients so that they could make sure to "say the right things" to the lender.

72.    The Jeff Funding Defendants and their conspirators used the internet to submit Economic Injury Disaster Loan (EIDL) and Paycheck Protection Program (PPP) applications that contained false information, including the gross revenues of the purported business, the number of employees, and the date the business was established.

73.    After a loan was approved, the Jeff Funding Defendants and their co-conspirators sent the customer an invoice, for approximately 20% of the loan proceeds.

74.    The Jeff Funding Defendants and their conspirators created email addresses and obtained numerous "burner phones" for purposes of this scheme.  In many cases, the email addresses and phone numbers used for the clients were assigned by the Jeff Funding Defendants and their conspirators.  When a lender attempted to contact a straw buyer, the Jeff Funding Defendants responded to the email or answered the phone, pretending to be the client.  If the lender contacted the client directly, the Jeff Funding Defendants coached the clients to repeat the false statements on the loan applications, all in violation of 18 U.S.C. § 371.

## COUNTS 4-23
## False Statements to Mortgage Lending Businesses and Federally Insured Institutions
### (18 U.S.C. § 1014)

75.     The Grand Jury realleges and incorporates the factual allegations set forth above in Paragraphs 1-22 and 27-74 and incorporates them as if fully set forth in Counts 4 through 23 of this Indictment.

76.     On or about the dates set forth below, in the Southern District of Texas and elsewhere, the defendants set forth below knowingly and willfully made false statements and reports for the purpose of influencing the actions of the mortgage lending businesses and financial institutions set forth below, in connection with the application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, and loan for the properties set forth below, by making false statements and reports regarding the borrowers' qualifications, including but not limited to the borrowers' income, employment, assets, liabilities, bank statements, and primary residence status:

| Ct. | Defendants | Date | Entity | Property | False Statements and Reports |
|---|---|---|---|---|---|
| 4 | (1) HEATHER ANN CAMPOS aka Jill Turner <br><br> (2) DAVID LEWIS BEST, JR. <br><br> (8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin | 8/20/2018 | United Wholesale Mortgage | 3722 W. Benders Landing Blvd Spring, TX | Employment, income, assets, bank statements, and primary residence status |
| 5 | (1) HEATHER ANN CAMPOS aka Jill Turner <br><br> (2) DAVID LEWIS BEST, JR. <br><br> (8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin | 8/20/2018 | International Bank of Commerce | 3722 W. Benders Landing Blvd Spring, TX | Employment, income, assets, bank statements, and primary residence status |

| Ct. | Defendants | Date | Entity | Property | False Statements and Reports |
|---|---|---|---|---|---|
| 6 | (1) HEATHER ANN CAMPOS aka Jill Turner<br><br>(2) DAVID LEWIS BEST, JR.<br><br>(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin | 9/5/2018 | Citizens Bank, N.A. | 3807 Oakfield Forest Lane Spring, TX | Employment, income, assets, bank statements, and primary residence status |
| 7 | (1) HEATHER ANN CAMPOS aka Jill Turner<br><br>(6) ELVINA BUCKLEY<br><br>(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin | 10/26/2018 | United Wholesale Mortgage | 30714 Lavender Trace Drive Spring, TX | Assets and bank statements |
| 8 | (1) HEATHER ANN CAMPOS aka Jill Turner<br><br>(2) DAVID LEWIS BEST, JR.<br><br>(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin | 6/3/2019 | Citizens Bank, N.A. | 3722 W. Benders Landing Blvd Spring, TX | Employment, income, and primary residence status |
| 9 | (1) HEATHER ANN CAMPOS aka Jill Turner<br><br>(6) ELVINA BUCKLEY<br><br>(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin | 7/31/2019 | Citizens Bank, N.A. | 4339 Foggy Creek Lane Spring, TX | Assets, liabilities, and bank statements |
| 10 | (1) HEATHER ANN CAMPOS aka Jill Turner<br><br>(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin<br><br>(13) KIMBERLI ANN TOMMAN | 8/6/2019 | Cardinal Financial Corporation, Limited Partnership | 24080 Augusta Drive Corona, CA | Income, liabilities, and primary residence status |

| Ct. | Defendants | Date | Entity | Property | False Statements and Reports |
|-----|------------|------|--------|----------|------------------------------|
| 11 | (1) HEATHER ANN CAMPOS aka Jill Turner<br><br>(2) DAVID LEWIS BEST, JR.<br><br>(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin | 8/22/2019 | Citizens Bank, N.A. | 7 Abbey Brook Place The Woodlands, TX | Employment, income, assets, bank statements, and primary residence status |
| 12 | (1) HEATHER ANN CAMPOS aka Jill Turner<br><br>(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin | 8/28/2019 | Citizens Bank, N.A. | 16623 Wheat Mill Lane Houston, TX | Income, assets, bank statements, and primary residence status |
| 13 | (1) HEATHER ANN CAMPOS aka Jill Turner<br><br>(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin | 9/6/2019 | Citizens Bank, N.A. | 6602 Lynngate Drive Spring, TX | Assets and bank statements |
| 14 | (1) HEATHER ANN CAMPOS aka Jill Turner<br><br>(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin<br><br>(14) RICHARD THOMAS GRASSIE | 12/2/2019 | Carrington Mortgage Services, LLC | 4009 Avenue O½ Galveston, TX | Employment, income, and primary residence status |
| 15 | (1) HEATHER ANN CAMPOS aka Jill Turner<br><br>(2) DAVID LEWIS BEST, JR.<br><br>(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin<br><br>(15) ARLEEN MARIE GROKETT | 2/11/2020 | Home Point Financial Corporation | 3807 Oakfield Forest Lane Spring, TX | Employment, income, assets, bank statements, and primary residence status |

| Ct. | Defendants | Date | Entity | Property | False Statements and Reports |
|---|---|---|---|---|---|
| 16 | (1) HEATHER ANN CAMPOS aka Jill Turner<br><br>(2) DAVID LEWIS BEST, JR.<br><br>(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin<br><br>(11) BLANKA UHROVCIKOVA aka Blanka Williams | 2/14/2020 | Home Point Financial Corporation | 629 17th Avenue North Texas City, TX | Employment, income, assets, bank statements, and primary residence status |
| 17 | (1) HEATHER ANN CAMPOS aka Jill Turner<br><br>(2) DAVID LEWIS BEST, JR.<br><br>(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin | 2/20/2020 | NewRez LLC | 9406 Bob White Drive Houston, TX | Employment, income, assets, bank statements, and primary residence status |
| 18 | (1) HEATHER ANN CAMPOS aka Jill Turner<br><br>(2) DAVID LEWIS BEST, JR.<br><br>(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin | 4/17/2020 | Home Point Financial Corporation | 10218 Antelope Alley Missouri City, TX | Employment, income, and primary residence status |
| 19 | (1) HEATHER ANN CAMPOS aka Jill Turner<br><br>(2) DAVID LEWIS BEST, JR.<br><br>(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin | 6/17/2020 | Home Point Financial Corporation | 2514 Bycreek Drive Houston, TX | Employment, income, assets, bank statements, and primary residence status |
| 20 | (1) HEATHER ANN CAMPOS aka Jill Turner<br><br>(2) DAVID LEWIS BEST, JR.<br><br>(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin | 6/19/2020 | Home Point Financial Corporation | 26034 Mills Ridge Court Kingwood, TX | Employment, income, assets, bank statements, and primary residence status |

| Ct. | Defendants | Date | Entity | Property | False Statements and Reports |
|---|---|---|---|---|---|
| 21 | (1) HEATHER ANN CAMPOS aka Jill Turner<br><br>(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin<br><br>(14) RICHARD THOMAS GRASSIE | 12/3/2020 | International Bank of Commerce | 3722 W. Benders Landing Blvd Spring, TX | Assets and primary residence status |
| 22 | (1) HEATHER ANN CAMPOS aka Jill Turner<br><br>(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin<br><br>(14) RICHARD THOMAS GRASSIE | 12/3/2020 | Academy Mortgage Corporation | 3722 W. Benders Landing Blvd Spring, TX | Assets and primary residence status |
| 23 | (1) HEATHER ANN CAMPOS aka Jill Turner<br><br>(2) DAVID LEWIS BEST, JR.<br><br>(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin | 12/3/2020 | Cherry Creek Mortgage, LLC | 4014 Hidden Winds Drive Spring, TX | Employment, income, assets, and bank statements |

all in violation of 18 U.S.C. §§ 1014 and 2.

## COUNT 24
### Conspiracy to Make False Writings to the Federal Trade Commission
### (18 U.S.C. § 371)

77.    The Grand Jury realleges the factual allegations set forth above in Paragraphs 1-22

and 27-74 and incorporates them as if fully set forth in Count 24 of this Indictment.

78.    From in or around August 2017 through in or around July 2021, within the Southern

District of Texas and elsewhere, defendants

**(1) HEATHER ANN CAMPOS**
**aka Jill Turner,**
**(2) DAVID LEWIS BEST, Jr.,**
**(7) STEPHEN LAVERNE CRABTREE,**
**(8) STEVEN TETSUYA MORIZONO**
**aka Jeff Lucian aka Jeff Lucin,**

20

**(11) BLANKA UHROVCIKOVA**
**aka Blanka Williams,**
**(14) RICHARD THOMAS GRASSIE,**
**(15) ARLEEN MARIE GROKETT, and**
**(16) LUIS GIANCARLO BELEVAN**

did knowingly and willfully combine, conspire, confederate, and agree with one or more persons

known and unknown to the Grand Jury to commit certain offenses against the United States,

namely, to make and use false writings and documents, knowing the same to contain materially

false, fictitious, and fraudulent statements and entries in a matter within the jurisdiction of the

executive branch of the Government of the United States, by submitting reports falsely claiming

identity theft to the Federal Trade Commission for debts, collections, bankruptcies, late payments,

and credit inquiries, well knowing and believing that the debts, collections, bankruptcies, late

payments, and credit inquiries were in fact incurred, in violation of 18 U.S.C. § 1001(a)(3) (false

writing to a government agency), all in violation of 18 U.S.C. § 371.

<u>**COUNTS 25-27**</u>
**False Writings to the Federal Trade Commission**
**(18 U.S.C. § 1001)**

79.     The Grand Jury re-alleges and incorporates the factual allegations set forth above

in Paragraphs 1-22 and 27-74 and incorporates them as if fully set forth in Counts 25 through 27

of this Indictment.

80.     On or about the dates set forth below, in the Southern District of Texas and

elsewhere, the defendants set forth below willfully and knowingly made and used false writings

and documents, knowing the same to contain a materially false, fictitious, and fraudulent statement

and entry in a matter within the jurisdiction of the executive branch of the Government of the

United States, by submitting reports falsely claiming identity theft to the Federal Trade

Commission for debts, collections, bankruptcies, late payments, and credit inquiries, well knowing

and believing that the debts, collections, bankruptcies, late payments, and credit inquiries were in fact incurred by the listed individuals:

| Ct. | Defendants | Date | False Writing and Document |
|---|---|---|---|
| 25 | (7) STEPHEN LAVERNE CRABTREE<br><br>(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin | 2/12/2020 | Identity theft report for CRABTREE |
| 26 | (1) HEATHER CAMPOS aka Jill Turner<br><br>(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin | 12/17/2020 | Identity theft report for M.S. |
| 27 | (1) HEATHER ANN CAMPOS aka Jill Turner<br><br>(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin | 5/3/2021 | Identity theft report for J.S. |

in violation of 18 U.S.C. §§ 1001(a)(3) and 2.

## COUNT 28
### Conspiracy to Commit Wire Fraud
### (18 U.S.C. § 1349)

81.    The Grand Jury re-alleges and incorporates the factual allegations set forth above in Paragraphs 1-22 and 27-74 and incorporates them as if fully set forth in Count 28 of this Indictment.

82.    From in or around April 2020 through in or around July 2021, within the Southern District of Texas and elsewhere, defendants

**(1) HEATHER ANN CAMPOS**
**aka Jill Turner,**
**(7) STEPHEN LAVERNE CRABTREE, and**
**(8) STEVEN TETSUYA MORIZONO**
**aka Jeff Lucian aka Jeff Lucin**

did knowingly and intentionally conspire with others known and unknown to the Grand Jury to commit the offense of knowingly and with the intent to defraud, devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and to knowingly transmit and cause to be transmitted writings, signs, signals, pictures and signs by means of wire in interstate and foreign commerce for the purpose of executing such a scheme and artifice in violation of 18 U.S.C. § 1343 (wire fraud), in violation of 18 U.S.C. § 1349.

## COUNTS 29-34
### Wire Fraud
### (18 U.S.C. § 1343)

83.     The Grand Jury realleges Paragraphs 1-22 and 27-74 of this Indictment and incorporates them as if fully set forth in Counts 29 through 34 of this Indictment.

84.     On or about the dates listed below, in the Southern District of Texas and elsewhere, for the purpose of executing the scheme to defraud and to obtain money by materially false and fraudulent pretenses, representations, and promises, and attempting to do so, the defendants set forth below did knowingly transmit and caused to be transmitted by means of wire communication in and affecting interstate commerce, the writings, signals, and sounds described below:

| Ct. | Defendants | Date | Wire Communication |
|---|---|---|---|
| 29 | **(1) HEATHER ANN CAMPOS aka Jill Turner**<br><br>**(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin** | 8/10/2020 | Electronic submission to SBA for EIDL application for Second Chance CPR Inc. |
| 30 | **(1) HEATHER ANN CAMPOS aka Jill Turner**<br><br>**(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin** | 8/28/2020 | Electronic signing of note for EIDL funds of $150,000 for Second Chance CPR Inc. |

| Ct. | Defendants | Date | Wire Communication |
|---|---|---|---|
| 31 | (1) HEATHER ANN CAMPOS aka Jill Turner<br><br>(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin | 10/2/2020 | Electronic submission to SBA for EIDL application for M.W. |
| 32 | (1) HEATHER ANN CAMPOS aka Jill Turner<br><br>(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin | 10/5/2020 | Electronic signing of note for EIDL funds of $125,000 for M.W. |
| 33 | (1) HEATHER ANN CAMPOS aka Jill Turner<br><br>(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin | 4/30/2021 | Electronic submission for PPP application for Frona Group |
| 34 | (1) HEATHER ANN CAMPOS aka Jill Turner<br><br>(8) STEVEN TETSUYA MORIZONO aka Jeff Lucian aka Jeff Lucin | 5/14/2021 | Electronic signing of note for PPP funds of $20,832 for Frona Group |

in violation of 18 U.S.C. §§ 1343 and 2.

## COUNT 35
### Illegal Monetary Transaction
### (18 U.S.C. § 1957(a))

85.    On or about December 3, 2020, within the Southern District of Texas and elsewhere, defendant

### (1) HEATHER ANN CAMPOS
### aka Jill Turner

did knowingly engage and attempt to engage in a monetary transaction affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is the withdrawal of $52,592 from Wells Fargo Account ending in 1861 and purchase of a cashier's check, such property having been derived from the specified unlawful activity, that is, 18 U.S.C. § 1343 (wire fraud), as set forth in Counts 29 and 30, in violation of 18 U.S.C. § 1957.

<u>**COUNT 36**</u>
**Conspiracy to Commit Bank Fraud**
**(18 U.S.C. § 1349)**

86.    The Grand Jury realleges Paragraphs 1-22 and 27-74 of this Indictment and

incorporates them as if fully set forth in Count 36 of this Indictment.

87.    From in or around August 2017 through in or around July 2021, within the Southern

District of Texas and elsewhere, defendants

**(1) HEATHER ANN CAMPOS**
**aka Jill Turner,**
**(2) DAVID LEWIS BEST, Jr.,**
**(8) STEVEN TETSUYA MORIZONO**
**aka Jeff Lucian aka Jeff Lucin,**
**(11) BLANKA UHROVCIKOVA**
**aka Blanka Williams, and**
**(15) ARLEEN MARIE GROKETT**

did knowingly and willfully combine, conspire, confederate, and agree with one or more persons

known and unknown to the Grand Jury to knowingly execute and attempt to execute a scheme and

artifice to defraud to obtain monies, funds, credits, assets, and securities owned by and under the

custody and control of a financial institution, by means of materially false and fraudulent pretenses,

representations, and promises in violation of 18 U.S.C. § 1344 (bank fraud), all in violation of 18

U.S.C. § 1349.

<u>**COUNT 37**</u>
**Obstruction of an Official Proceeding**
**(18 U.S.C. § 1512(c)(1))**

88.    From in or about April 2021 to in or about July 2021, in the Southern District of

Texas and elsewhere, the defendants

**(1) HEATHER ANN CAMPOS**
**aka Jill Turner, and**
**(8) STEVEN TETSUYA MORIZONO**
**aka JEFF LUCIAN aka JEFF LUCIN**

corruptly altered, destroyed, mutilated, and concealed a record, document, and other object, specifically, but not limited to, email accounts, spreadsheets, electronically stored documents and information, and attempted to do so, with the intent to impair the object's integrity or availability for use in an official proceeding, to wit, a federal grand jury investigation into criminal offenses investigated by the Federal Housing Finance Agency – Office of Inspector General, in violation of 18 U.S.C. §1512(c)(1).

## COUNT 38
### Tampering with a Witness
### (18 U.S.C. § 1512(c)(2))

89.    On or about May 13, 2021, in the Southern District of Texas and elsewhere, the defendant

### (1) HEATHER ANN CAMPOS
### aka Jill Turner

did corruptly obstruct, influence, and impede, and did attempt to corruptly obstruct, influence, and impede an official proceeding, specifically, by instructing E.C. that federal agents were probably imposters and to withhold information in connection with a federal grand jury investigation into criminal offenses investigated by the Federal Housing Finance Agency – Office of Inspector General, in violation of 18 U.S.C. §1512(c)(2).

**NOTICE OF FORFEITURE**
**28 U.S.C. § 2461(c); 18 U.S.C. §§ 981(a)(1)(C) & 982(a)**

Pursuant to 18 U.S.C. § 982(a), 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C), the

United States gives notice to defendants

**(1) HEATHER ANN CAMPOS**
**aka Jill Turner,**
**(2) DAVID LEWIS BEST, Jr.,**
**(6) ELVINA BUCKLEY,**
**(7) STEPHEN LAVERNE CRABTREE,**
**(8) STEVEN TETSUYA MORIZONO**
**aka Jeff Lucian aka Jeff Lucin,**
**(11) BLANKA UHROVCIKOVA**
**aka Blanka Williams,**
**(12) JESUS ALBERTO ADAME CORDOVA,**
**(13) KIMBERLI ANN TOMMAN,**
**(14) RICHARD THOMAS GRASSIE**
**(15) ARLEEN MARIE GROKETT, and**
**(16) LUIS GIANCARLO BELEVAN**

that upon conviction for making a false statement to mortgage lending businesses and financial

institutions and for committing wire fraud and bank fraud and for conspiracy to do so, in violation

of 18 U.S.C. §§ 371, 1014, 1343, 1344, and 1349, the United States will seek the forfeiture of any

property constituting or derived from proceeds obtained, directly or indirectly, as the result of such

violations.    The United States gives additional notice to **HEATHER ANN CAMPOS** that upon

conviction of a Section 1957 offense, the United States will seek the forfeiture of all property

involved in that offense.

The property to be forfeited includes, but is not limited to, the following:

a.      $5,048.47 in funds seized from STEVEN TETSUYA MORIZONO
aka Jeff Lucian aka Jeff Lucin

## Money Judgment and Substitute Assets

The United States will seek the imposition of a money judgment against each defendant. In the event that one or more conditions listed in 21 U.S.C. § 853(p) exists, the United States will seek to forfeit any other property of the defendants in substitution, up to the amount of the money judgment against that defendant.

Original Signature on File

ALAMDAR S. HAMDANI
United States Attorney

By: _____

Eun Kate Suh
Jay Hileman
Assistant United States Attorneys